Estate of BERTHA BERTON, Deceased.

[No. 7245; decided March 19, 1892.]

**Wills.**—Every Portion of a Will must be Made to have Its Just Operation, unless there arises some invincible repugnance, or else some portion is absolutely unintelligible.

**Wills—Transposition of Paragraphs.**—Words or clauses of sentences, or even whole paragraphs, of a will may be transposed to any extent, with a view to show the intention of the testator.

**Wills.**—If an Immediate Distribution of the Estate after due administration had in this case been contemplated, the testatrix would not have made the expense of educating the children a charge upon the estate.

**Wills.**—The Intent of the Testatrix in this Case was, that the estate be kept whole until the children attain their majority, and the bequest to the husband is dependent upon his living until that time, and was in a measure intended as compensation for the services expected of him by the testatrix in the promotion of the welfare and the education of the children.

**Distribution—Premature Application for.**—The application of the husband in this case for distribution, having been filed before the children attained their majority, is premature and must be denied.

Bertha Berton died on April 3, 1888. The will set forth in the opinion was admitted to probate and the surviving husband appointed executor thereof on May 10, 1888. He filed a petition for distribution on October 17, 1891, and objections thereto were thereafter filed by the guardian of the children.

Sidney V. Smith, for petitioner.

Naphtaly, Freidenrich & Ackerman, for guardian of the children.

COFFEY, J. Flavien Berton was the surviving husband of decedent testatrix (her second spouse) and the executor of her will and a legatee and devisee therein. The will is in the following form, it being premised that the instrument is olographic, and that from the evidence it appears that it was written by a French woman, as may appear from the idiomatic expression:

"In the Name of God, Amen.

"I, Bertha Berton, of the City and County of San Francisco, State of California, being of sound mind and memory, calling to mind the frealty of human life, desire to settle my worldly affairs and direct how the estate of which it has pleased God to bless me shall be disposed, at the time of my decease.

"I do make and publish this my last will and testament, hereby revoking all other wills and testaments by me made heretofore.

"I comend my body to the earth, to be buried with little expense by my executors hereafter named.

"My will is, that all my debts and funeral expenses be paid out of my estate by my executors.

"I desire to give to my only two beloved children, Michael Albert Tschurr, born in San Francisco, and now residing with my beloved father, Michael Corai, in Zug-Graubenden, Switzerland, and my daughter, Anna Paulina Catharina Tschurr, born and now residing in San Francisco, the summe of ten thousand dollars each, share and share alike; this to be theyr separate part of my estate, which I give to them.

"I further give and bequeath the balance of my estate, of which I may die seised or posessed, or to which I shall be entitled at the time of my decease, to my beloved husband, Flavien Berton, of the City and County of San Francisco, my beloved son, Michael Albert Tschurr, and my beloved daughter, Anna Paulina Catharina Tschurr, share and share alike. Each to receive one-third of my estate after my two named children will have received theyr ten thousand dollars each.

"My beloved son shall receive his share of my estate at the time he attains the age of twenty-five years. It is my wish that my only daughter should not mary before she attains the age of twenty years. At that time, if she maries, she to receive all her part of my estate, this to be forever her own separate property outside of five thousand dollars, which shall be her mother's wedding gift. Her husband never to have any right to the ballance of her estate, but the interests, her estate to be and remain her *own separate*

property, at the time of her decase to go to her children, or
if there are no children, one-half to be given to her hus-
band, the other half to her brother or his *hevers.*

"Should it please God to call one of my children from
this earth before they should be *maried,* or have family, *theyr*
share to go share and ·share *alike* to *theyr* step-father, or
brother or sister.

"It is my will, that my children above named, being the
children of my dearly beloved husband, Christian Tschurr,
deceased, be well educated, *theyr* education be paid out of
the interests of my estate. My son to *choos* the proffession
he wishes, or has talent for.

"I do nominate, constitute and *apoint* my beloved husband,
Flavien Berton, of the City and County of San Francisco,
to be the executor of this my last will and testament. I
have full confidence that he will do all in his power to pro-
mote the wellfare of my two named children, and ·in this *con-
fidence* he shall not be obliged to give any bonds whatever.
He shall have full power to sell at public or private sale, at
such time as he may deem best, all the property, real or *per-
sonall,* of which I may die *seised* or *posessed,* and to which
I may be entitled at the time of my decase.

"Should my dear husband, Flavien Berton, be called from
this earth before my children attain *theyr* majority, his
share of my estate to go back to my said two children. Should
he *remary,* he to have only *fife thousand* dollars of my estate,
the ballance to go back to my two children, share and share
*alike.* My beloved husband's father, Jean Berton, residing
at St. Sorlin Drom, France, I wish in case of our *decase*
to get one hundred dollars *jearly* for the time of his life, this
contribution to be paid out of the interests of my estate and
to cease at the time of his *decase.*

"I, the said Bertha Berton, has to this my last will and
testament set my hand and seal this the eightenth day of
April, in the year of our Lord One thousand eight hundred
and eighty-seven.

"(Seal) BERTHA BERTON."

Testatrix was the mother of two children, the issue of her
marriage with her first husband, from whom she inherited

the estate that she disposed of by will. She married the applicant, Mr. Berton, about a year before her death. In the will above quoted it appears that after giving to each of her children $10,000 she undertakes to distribute the residue as follows: "I give the balance of my estate to my beloved husband, Flavien, and my beloved children—share and share alike; each to receive one-third"; the estate to be distributed at the time which she then undertakes to fix, the son to receive his share when he attains his twenty-fifth year, the daughter her share upon her marriage, or, if she die without issue, this share to go to her brother; and, having stated the conditions upon which these two residuary legatees shall obtain their one-third of the estate, she limits the legacy given to Berton, by providing that should he die before her two children attain their majority, the share bequeathed to him shall go back to her children.

It is agreed by all the counsel that the postponement of the son's interest, there being no intermediate estate and no trust created to support it, is inimical to the absolute nature of the devise, and must be disregarded as void. So, likewise, the limitation over of the daughter's share after her decease to her children may be overlooked, the estate being all personalty.

It is claimed by counsel opposing the application that, as the evidence before the court shows that these children are not of age, Berton's application is premature, and he must wait until these children reach their majority before he can claim distribution of the estate.

The court should ascertain and execute the intention of the testatrix.

Redfield in his work on Wills says (volume 1, pages 430-432): "There is, perhaps, no rule of construction of more universal application to wills, or which oftener requires to be acted upon, than that every portion of the instrument must be made to have its just operation, unless there arises some invincible repugnance, or else some portion is absolutely unintelligible." (Page 435, rule 14.)

The next rule of construction laid down by him is rule 15: "There is no more clearly established rule of construction, as

applicable to wills, than that words or clauses of sentences, or even whole paragraphs, may be transposed to any extent, with a view to show the intention of the testator." Where a construction of a will "gives effect to all the provisions of the will, and renders them all harmonious and consistent, both with each other and with the general purpose and intent of the will, it affords very satisfactory ground of presumption that it reaches the source of the difficulty, and explains the mode in which it arose."

In the light of these rules of construction, what was the intention of Mrs. Berton as expressed in her will with reference to the bequest made to her husband? With much particularity, and with the love of a mother for her children, she fixes the time when they are to enjoy the estate bequeathed to them at a period when they are presumed to know the value of money. Her son is to have his share when he is twenty-five years of age—her daughter when she marries; and, feeling that her children are entitled to this estate, made for them by her labor, and not that of their stepfather, who, though kindly spoken of by Mrs. Berton in her will, is nevertheless a stranger to them, she declares that he is entitled to his share after they have become of age or married. In giving her husband one-third of her estate, but making the gift dependent upon his living after said children attain their majority and marry, she was influenced thereto by the belief that her second husband deserved and should be compensated for his labor expended and interest taken in the welfare and education of said children. By the terms of her will she refers to the services expected of him in behalf of these children in these words: "I have full confidence that he (Berton) will do all in his power to promote the welfare of my two named children"—and beyond all that, and as indicative of the full and matured intent of the testatrix to keep her estate intact and undisturbed during the minority of said children, she charges said estate with the expense of educating them, in these words: "It is my will that my children above named, being the children of my dearly beloved husband, Christian Tschurr, deceased, be well educated, their education be paid out of the interest of my estate." If an imme-

diate distribution of the estate (after due administration) had been contemplated by the testatrix, she would surely have imposed no such charge upon the estate. Can it not fairly be maintained that the import of this language is that the money of the estate should be so invested as to yield an income, and such income or interest be applied, so far as necessary, toward the education of said children, who were, at the time of the execution of said will, and still are, being educated abroad?

The court adopts the argument, to the extent hereinabove indicated, against the application, and believes that the intent of the testatrix is carried out in the keeping of the estate whole until the minor children attain their majority.

The petition for distribution is denied.

---

In Construing a Will, Effect Should be Given, if possible, to every object and every expression therein contained. It is a fundamental rule that the words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative: Webster v. Thorndyke, 11 Wash. 390, 39 Pac. 677; Rhoton v. Blevin, 99 Cal. 645, 34 Pac. 513; Estate of Mayhew, 4 Cal. App. 165, 87 Pac. 417; Estate of Stratton, 112 Cal. 513, 44 Pac. 1028; Estate of Tompkins, 132 Cal. 173, 64 Pac. 268.

A Court cannot Reform a Will after the death of the testator; nor can it transpose words or provisions therein, so as to change the import and meaning, when the intention of the testator can be discovered from an examination of the instrument as it is written. However, courts, in reading a will, do not hesitate to transpose words, supply omitted ones, and reject those that are repugnant, when necessary to do so in order to give effect to the evident meaning and purpose of the testator: 1 Ross on Probate Law and Practice, 73.